Her argument is United States of America versus Adrian Stock, Ms. Long. May it please the court. My name is Elisa Long. I'm an assistant federal public defender and I represent Adrian Stock. I would like to reserve three minutes for rebuttal. Granted. This case turns on the statutory construction of 18 U.S.C. 875C and the definition of threat used in that statute. As the district court found, a threat is defined as a statement evincing a present or future intent to injure. And such a statement is conspicuously absent from the Craigslist posting that is quoted in the indictment in Mr. Stock's case. You're not arguing, are you, that statements of past intent cannot reveal an intent to harm at once or in the future? I'm arguing that statements of past intent to harm standing alone are not a threat within the meaning of the statute. If they're accompanied by language evincing a present or future intent to injure, they could be read in that context. But here we don't have that. There is nothing, there is no language in this indictment indicating a present intent to injure or an intent to injure in the future. There just is no language. What we have is a description of past conduct. What about the one small phrase in here that says, I really wish he would die? Right. Wishing and hoping that harm. Isn't that somewhat certainly futuristic? It's a present wish that he die. Yeah. But it's unspecified at whose hand. Mr. Stock doesn't say or the posting doesn't say, I wish he would die and I'm going to be the one to do it. It just says, I wish he would die. And there is support for wishing and hoping is not a threat. It's not punishable under 875C. You need to look at the totality of this statement, do you not? The district court said that and I think there's a lot of merit to that statement. You can't cherry pick different sentences, different phrases, clauses if you look at the totality. I believe that is true, Your Honor, and I believe that the – And that context includes the statement immediately before that referred to by Judge Fischer, but alas, I can't find that bastard anywhere. All right? Doesn't that tell you something about present, not past, intent? It does not say if he finds him, harm will occur. He's saying, I've given up. I've resigned. I've abandoned any driving around, looking, trying to find JKP. I can't find him. And now I'm going to wish and hope that harm will come to him. And, in fact, the very last statement, the very last sentence where he says – In fact, he says he also wishes – I'll throw another statement in here I think has some value. I wish you burn in hell. Right. Wishing and hoping are not threats within the meaning of the statute. You know, a lot of your brief seems to deal with his subjective intent. Isn't the test here objective? The test for whether a threat is a threat within the meaning of the statute, as we're arguing in statutory construction, is unrelated to the mens rea. It's just whether or not the statement evinces an intent to injure presently or in the future. Isn't the test, though, when a reasonable person, via the communication, is describing an expression of intent to inflict injury? That's the test for whether a different element of the offense, which is whether it is a true threat, whether when the speaker makes the statement, he reasonably believes that it will be perceived as a threat to injure or a threat to injure presently or in the future. Hasn't our back and forth here, though, really made a case for the proposition that it ought to be up to a jury to consider in the full context of all these words together, whether or not what was stated was a true threat? It's not a jury question if no jury can find that these statements include a threat. That is our position. A properly instructed jury could not find that this Craigslist posting contained a threat to injure presently or in the future. That's where we have to get to, and that's where you say the district court should have gotten to was, in effect, a decision that said no jury could find that the language of this statement contained a threat as included in 875, right? That's correct. We believe that is the correct holding, and then the court should have granted Mr. Stock's motion to dismiss. All right. You make a good case in your argument and his argument back and forth on, you know, whether or not in the Hewitt case is cited for different propositions, but you make an argument that there are cases in which we can look and make a determination as a matter of law that the facts in the indictment don't establish the crime charge. That's correct. Okay. And you think that's the case here? I do, and I do. But let me, with that point, if we come to the conclusion that, yes, your theory is right, but in looking at these facts and looking at them in totality, we just can't say that no jury could conclude that this was, you know, that this did not constitute a threat, what do we do with the case? Then you would affirm. You would affirm. Okay, and the district court was right in saying we're going to at least allow them to go before a jury. Right, but the conclusion is incorrect that these statements taken separately, taken together, construed in their context. The only context here is the indictment, the language in the indictment. There is no language in there indicating. The court would have to read in language that is not there in order to find a present intent to injure JKP or any police officer. All right, let me take you to the legal question here. Where do you say that we have said that there's a temporal requirement in 875? Which case? The court has never addressed whether there's a temporal requirement in 875. Zavrel is the closest that this court has come, and that's in 876, which is a statute using comparable language. But we weren't faced in, Zavrel, with the question of whether past intent can constitute a threat. That's correct, but the court does cite with approval a jury instruction defining threat and says we agree with this jury instruction that this was, the government said that this is the way threats should be construed. We agree with this definition, and that is the definition that Judge Fisher used in finding that Zavrel set out the standard, that it is a present intent to injure in the present, immediately, or in the future. And other courts and other jurisdictions, and I cite them in my brief, have found similarly. The Ninth Circuit, the Sixth Circuit, there are other circuits that have looked at this language, either in 875C itself or the other federal threat statutes containing almost identical language and saying it has to be, it is by nature, by definition, prospective. A threat is not backward looking. But doesn't the statute, and that's where we go as a matter of first resort, it says any threat. It doesn't have a temporal limitation in it, does it? The statute doesn't explicitly have a temporal limitation. The word threat does. The other statutes, the other federal threat statutes, including the one construed in Zavrel by this court, also has that language, any threat. So I don't think the any is a distinguishing, is what distinguishes this here. I think it should be construed in the same way that the court has done in Zavrel and that other federal courts have done with respect to 875C. I also think the court, in construing the language, should keep in mind the canons of strict construction of criminal law and keep in mind sort of the First Amendment underpinnings of this case, which is that when you criminalize speech, you have to keep in mind that the First Amendment is always a factor. It is always a limiting factor. And I think when the district court read into the Craigslist posting an intent, she went beyond the words that were actually in the indictment, in the posting. Can you provide us, as I will ask the government to do as well, with a definition of threat that takes into account the temporal? I would use the threat that the court uses in Zavrel. In Zavrel. The jury instruction that is at a present. I don't have the words verbatim, but it is an intent, an avowed determination to injure presently or in the future. It seems to me, beyond debate, that one could express an intent to do something in the past, except perhaps through time travel. So it cannot be that what has occurred in the past or what has been said in the past can constitute anything other than circumstantial evidence of what is intended in the present. Would you agree? If there is something that, if there's some language, if there was some language in this statement linking that to the present, but what you have here is, but alas, I can't find J.K.P. anywhere. A resignation, sorry, a shifting in I was looking for him, I engaged in this conduct, I had these bad thoughts. But why shouldn't it be within the jury's power to determine whether that constitutes some kind of abandonment? Because it's not, at least I would suggest, not clearly expressly an abandonment of the intent. I would respectfully disagree, but even if the court doesn't believe that that is an express abandonment, and there's that statement, but alas, I can't find him anywhere, followed by ellipses marks, and then there really is a change in the tenor of the posting to I wish and I hope these bad things will happen. And the very last statement here, in the very last sentence, is I only wish I could have been the one to send him there. I mean, by its own terms means he's not going to be the one. He's renounced any, you know, that's it. He's done with this. He's posted this. These are his feelings. He had these bad thoughts, but he's resigned himself to writing a posting. And that's what the words mean, and that's all the court and the district court could look at, or what are the words in the indictment, and is there anything in there that says I'm going to do something in the present. Let me just give a hypothetical. After that language about but alas, I couldn't find him anywhere, the posting then said, but now I have a full tank of gas, and tomorrow is a new day. That would be a completely different, we would not be up here making that argument, because there at least is some indication linking the bad thoughts to something that he's going to do presently or in the future, and we just don't have that here. I would also just point out to the court cases where courts have used this analysis where they've looked at the definition of threat. Havelock from the Ninth Circuit, Lanham from the Sixth Circuit, Guerrero from the Southern District of Indiana, where they've said, by definition, if the language is not forward-looking or intent to injure presently, then as a matter of law it is not a threat. And those cases, the cases that the government relies upon are cases where the challenge is really to whether or not this is a true threat that assess the seriousness of the threat, and that's not Mr. Stock's argument here. His argument here is that it just by definition is not a threat. And just to say on the record what I assume is very clear, you've abandoned the First Amendment arguments that you raised. I did not abandon them. Those are arguments that inform the way this court construes the statute as a statute that criminalizes pure speech. My position is that the court need not reach those arguments, because you only reach the constitutional argument of whether or not this is a true threat if you in fact have a threat, and we don't have a threat here. I'd like to reserve the remaining time for rebuttal. Thank you. We'll have you back on rebuttal, Ms. Long. Ms. Irwin? So what's your definition of threat? Your Honor, my ---- What definition should we adopt? The definition the court should adopt is the definition given by the Supreme Court in Watts and Black v. Virginia, and that definition does not contain a temporal requirement. But those are true threat cases, are they not? That's true, and they're construing analogous statutes, but they look to see what a threat is, and there's no temporal requirement in those. And, in fact, if you look at the reason why the Supreme Court carved out threats that do not fall within the First Amendment, there's policy reasons why they did that, and it's the fear of violence, which has no temporal requirement. You can have fear even after somebody has said they're going to do something and it's stopped. There's the disruption that comes from the fear that you have to react to the risk, that you have to react to the fear, and then there's the fear of future injury. So it's not just as if Congress or, excuse me, the courts have created this exception because of the concern about future injury. It's the result of fear. It's the result of fear and the consequences of that. So the defendant's position is much too narrow and doesn't encompass what the courts have always construed a threat to be. And our position further is actually we would start at a different point for the analysis for this court, and that would be with the decision that Judge Fischer mentioned, which is Hewitt. We believe that this case really begins and ends with a Rule 7 analysis as informed by Berggren and Hewitt, and those cases say it's notice pleading, it's putting the defendant on notice of a sufficient factual predicate, the elements of the offense, the timing of the offense, and notifying the defendant of any pertinent facts that he needs to know in order to answer it. It's basically the who, what, when, and where. And in this case, we've done that. The elements that the government needs to prove, as this court has found in Himmelright, is that the defendant acted knowingly and willfully when he made a communication in interstate commerce, and two, the communication must reasonably be perceived as threatening bodily injury. Let me stop you there. I mean, you've argued this in your brief, but, I mean, Hewitt was a different case. Hewitt was a case where the district court in Hewitt was determined, tried to determine that there was insufficient evidence, and Hewitt said that you can't challenge the insufficiency of the evidence with a 12B3 motion. It seemed to be a sub silentio incorporation of Twombly and Pickball. But here, I mean, what I'd like to, I mean, are you saying, because I guess you're sort of going down that road again, are you saying that there's no circumstance under which a court could dismiss an indictment as a matter of law where what's containing the indictment doesn't establish the offense that's charged? No, or not at all. I agree with you that Hewitt was a different case. Okay. Well, then why are you saying that the case begins and ends with Hewitt? There's Bergwin as well. And Bergwin. And the rule is, Rule 7 requires a clear, concise, precise statement. Okay. It's notice pleading. And if you want the, we're required to tell the defendant the who, what, when, and where. And that happened in this case. We told him who, Adrian Stock, when, the date of February 9, 2011, where, through Interstate Commerce, specifically Craigslist, he made a posting that contained a threat, a communication that was a threat. You could end there and find that the district court properly denied his motion to dismiss. You could end there. That's right. But the defense is saying you can't end there because notwithstanding everything that was provided, you haven't pled in this indictment an offense under 875. Understood. And that's the second part of my argument. My first part is that you don't need to go any further than a pleading analysis. The second point is, is that the district court said, agreed with Mr. Stock, you have to have a present or future injury alleged in your, included within your threat. Our position is. Is that right or wrong? Our position is the district court was incorrect in making that conclusion. We returned, as Judge Segares pointed out, we returned to the statute. It says any threat. It doesn't limit it in any fashion. If you look at the Supreme Court, the definition of threat,  And then if you look at Zavarro, it really doesn't provide any support. As the court pointed out in its questioning of Ms. Long, the issue was not before the Zavarro court. The court simply quoted the jury instructions that were used in that case and said, we are not reaching this issue because we find that there was enough before the jury to find an imminent threat and a future threat. So that issue is not there. And it would be before this court for the first time. And we would go back to the definition of threat under the statute. And also, again, the policy considerations. The reason why we have this exception is the fear of violence. The fear of violence results in disruption and engenders confusion. And also that there might be future injury. But you're going to be leaving out those two other considerations if you draw a line that doesn't allow a threat in the past. If you don't buy that, then my argument is, and we obviously think that you should, this threat, this posting clearly states a present intent. If you look at it and read it in totality, as the court has pointed out, you can't parse it down. Mr. Stock? But your officer, he points out, he's saying he's kind of reflecting on the past. I wished I could have done it. Doesn't that sort of? Well, I think you have to look at it. You have to remember that he said, this is his first line. I went home loaded in my truck and spent the past three hours looking for this douche with the expressed intent of crushing him in that little piece of shit undercover gray Impala, hooking up my toe chains and dragging his stupid ass down to Creek Hills and just drowning him in the falls. Which, of course, happened in the past. Right. But it reflects a very, he has an expressed intent. There's no doubt. This is not a whim. He had an expressed intent. He took steps. He loaded his truck. He knew exactly what he was going to do and how he was going to do it. He took the time to post this on a public website that goes out to the, oh, excuse me, that goes out to the entire world and stays forever. This isn't a temporary, fleeting thought. Since you raised that, it's a curiosity to me. Is the medium he chose to express himself a factor that the district court should consider in reviewing the motion to dismiss? That is to say, he didn't convey this threat directly. He didn't convey it to a third person saying, go tell this SOB that this is what I said. Instead, he posted it on Craigslist, which seems an odd way to impart a threat. Is that a factor that, along with everything else, the context of all this language, ought to be considered? I do think so, but I think that it can cut both ways. Your point is well taken that maybe Craigslist would not be the choice that you or I might, I couldn't do it, frankly. I'd be faster with a hammer and chisel on a piece of marble than going to a computer and posting. But you're right, it's not directed to him personally, but he is saying to the entire world, he's emboldened enough to say to the entire world, this is how I feel about this particular police officer. This is what I've done. So I think that that does inform the analysis. And I think every medium can inform in different ways. His post goes on. Can I ask you just a, it's kind of odd language. Do you concede, your indictment has that that statement, among others, are involved in this case. The quoted statement's the only statement, right? Right. Well, I believe there may have been some other posts, but I don't believe they're relevant to this analysis. What we were trying to convey is we did not put the entire posting here. There was a few sentences taken out of this. The title was not put in here. Our position is if you go further on in his posting where he says, but alas, I cannot find, I forget, I cannot find that bastard anywhere. Our position is that's not a termination of his thoughts. These thoughts that are so serious, that are so meticulous, he simply can't find him. He is not saying, I'm done, this is in the past. Would you agree, or would you agree, that at least those beginning sentences are expressions of past intent? I agree. Coupled with however one might reasonably read the ensuing sentences. And I think the point that you made earlier is that this shows why this is a jury question, because it can be read more than one way. Our position is it was more than enough to get past a motion to dismiss, because while he does go on to say, I wish you were dead, and there are cases that talk about wishes. We don't dispute that. But if you take this in totality and follow the directive from courts that you have to look at everything, you can't just parse out pieces and not look at them in context. But those wishes simply can't be disregarded because he's used the word wish. That's what he's asking for here, is that so long as somebody says at the end, I'm just wishing, it eliminates the probative value, and I don't mean to invoke any type of 403, 404 analysis, is somehow diminished. And you can somehow walk away from the rest of those words. The only other point I would like to make is that the defense is asking for an exception of a last harangue. And I'm not sure exactly how this works into their argument, because I believe it would require the court to reach the First Amendment issue. But this court should be loath to make that type of exception. First of all, the defendant hasn't really explained to us what it means and why it's important in this context to have a last harangue exception. I guess I missed that. Last harangue. That's his explanation of what this is, that this was simply a last harangue. He invokes the old novel, The Last Hurrah, which is why the wording caught me, but it's not the O'Connor novel. As far as I know, it's not. Our position would be that there's really no basis, either explained in the briefs or in the law, for such an exception. The Supreme Court has made exceptions for political discourse, for hyperbole, for joking, for other types of coercion and duress, and there's really no basis in law or fact for the court to find an exception based on a last harangue. And I said that would be my last point, but I'm going to step back and say, if the court would like me to discuss the other cases the defendant relies upon, they have a forward from the Ninth Circuit I can discuss or the Lantham case. What about the case in the Sixth Circuit? The Lantham matter? Yes, the U.S. v. Lantham. In that case, the phrase that was at issue was the defendant said to his former wife or continuous wife, I've done more to you with a Parker 51 than a gun has done to your dad. A Parker being a pen. The Parker being a pen. And the Sixth Circuit said, on these facts, they weren't saying, as a matter of law, every threat must be this way. They're saying, on these facts, those past acts are not enough to state a threat. Our position is that this case is just factually dissimilar. We, A, don't have just mere writings. We have writings and actions, and present intent is indicated by the posting itself. Okay, let me make sure I'm clear on your third point that you made. If we find that there is a temporal requirement in 875, can you still prevail? Yes, and we'd rely on what the district court found, which was she analyzed this posting just as we have done here and found that a jury could determine that this is a true threat. For all the reasons I've already stated, I'd be happy to answer any more questions on that point. Thank you very much. Thank you. Is there one Ms. Long, rebuttal? The government suggests that this pleading is sufficient under Rule 7, and therefore the court need not go any further. I think what the government doesn't say is that Hewitt cites Panarella for the proposition that if the government does include facts in the indictment, chooses to specify certain facts, and those facts fall outside the scope of the criminal statute, then a motion to dismiss under Rule 12 is appropriate. The other thing I wanted to say is that the expression of feelings and the expression of wishes, those may cause somebody to be afraid, may cause fear in someone, but they're not actionable under the threat statute. If they are not threats, then they are not actionable, regardless of whether or not they cause fear or apprehension. And finally, I'm not quite clear on the government's argument about the last harangue. I'm not asking for an exception based upon a last harangue. I describe the words that are used in the posting as a last harangue, meaning that he kind of gave up. He tried something or he said he tried something. Again, what the court has to take as true is that he made the posting, not that he engaged in the conduct. He gave up, and then he resigned himself to hoping and wishing that harm would come. If there are no further questions. Thank you. Thank you very much. And thank you to both of counsel. This is an interesting case and a difficult case. It was very well argued. We thank both of you to take the case under advisement.